UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JASON W. TEN HARMSEL,

       Plaintiff,

                                     File No.  1:08-CV-880

v.

                                     HON. ROBERT HOLMES BELL

PFIZER INC., PLAN ADMINISTRATOR
OF PFIZER EMPLOYEE SEPARATION
PLAN NO. 516,

       Defendant.

_____/

**O P I N I O N**

      Plaintiff Jason W. Ten Harmsel filed this action against Defendant Pfizer Inc., the

plan administrator of the Pfizer Employee Separation Plan No. 516 (the "Plan"), alleging

wrongful termination of health benefits under the Plan and promissory estoppel.  This matter

is before the Court on Defendant's motion for judgment on the pleadings pursuant to Rule

12(c) of the Federal Rules of Civil Procedure.  (Dkt. No. 9.)  For the reasons that follow the

motion will be granted.

**I.**

      In reviewing a Rule 12(c) motion for judgment on the pleadings, "all well-pleaded

material allegations of the pleadings of the opposing party must be taken as true, and the

motion may be granted only if the moving party is nevertheless clearly entitled to judgment."

*JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (internal citation

and quotation marks omitted).  Under this standard the Court "'need not accept as true legal conclusions or unwarranted factual inferences.'" *Id.* (quoting *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir.1999)).  Although the court's review "rests primarily upon the allegations of the complaint, 'matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint[ ] also may be taken into account.'" *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008) (quoting *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)).  A Rule 12(c) motion "is appropriately granted 'when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law.'" *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008) (quoting *JPMorgan*, 510 F.3d at 582).

## II.

Plaintiff was employed by Defendant Pfizer Inc. until his separation from employment in January 2007.  (Dkt. No. 1, Compl. ¶ 4.)  Upon separation Plaintiff was entitled to participate in and receive benefits under the Pfizer Employee Separation Plan No. 516 (the "Plan").  (Compl. ¶ 5; Dkt. No. 6, Def.'s Answer, Ex. A, Summ. Plan  Description.)  The Plan is an employee welfare benefit plan regulated by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461.  The Plan offered several separation benefit package options.  Plaintiff selected the Fixed Package option.  (Answer, Ex. B, Separation Benefits Election Form.)

Throughout 2007, after his separation from employment, Plaintiff paid for health

benefits at the rate of $44 per month.  (Compl. ¶ 6.)  On November 2, 2007, Plaintiff completed his annual enrollment, and Defendant confirmed his election to continue health benefits at the rate of $61 per month for 2008.  (Compl. ¶ 7; Compl. Ex. A.)  On or about December 19, 2007, the Plan accepted a check from Plaintiff in the amount of $244 for the first three months of health benefits for the year 2008.  (Compl. ¶ 10; Compl. Ex. C.)  The Plan subsequently confirmed that Plaintiff's contribution amount for the 2009 plan year would be $61.  (Compl. Ex. D.)

In April 2008, the Plan terminated Plaintiff's health benefits and retroactively increased his monthly premiums from $61 per month to $1047.80 per month.  (Compl. ¶ 12.)  On May 23, 2008, Plaintiff appealed the Plan's termination of his health benefits and its retroactive increase of his monthly premium for health benefits.  (Compl. ¶ 13; Answer, Ex. C.)  Plaintiff asserted that he was entitled to continued medical coverage at the rate of $61 per month for 2008 and the first six months of 2009.  (Compl. ¶ 15.)  On August 7, 2008, the Plan denied Plaintiff's appeal, but offered to reinstate his medical coverage if he repaid all contributions due from January 1, 2008, at the rate of $1047.80 per month.  (Compl. ¶ 14; Answer, Ex. D.)

Plaintiff filed this action for wrongful termination of health benefits under the Plan and promissory estoppel.  Plaintiff seeks an order requiring the Plan to provide medical benefits at the rate of $61 per month for the year 2008 and the first six months of 2009, to reimburse Plaintiff for expenses incurred as a result of the termination of his coverage, and

to reimburse Plaintiff for his actual attorney's fees and costs.

**III.**

Count I of Plaintiff's complaint alleges wrongful termination of benefits.  Defendant contends it is entitled to judgment as a matter of law as to Count I because the denial of benefits was consistent with the clear and unambiguous terms of the Plan and was not arbitrary and capricious.

If a plan clearly grants to the administrator discretion to construe the terms of the plan or to make benefit determinations, the district court reviews the administrator's denial of benefits pursuant to an ERISA plan under the arbitrary and capricious standard of review. *Jones v. Metropolitan Life Ins. Co.*, 385 F.3d 654, 659-60 (6th Cir. 2004) (citing *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 613 (6th Cir. 1998)).

The Plan provides:

> The Plan Administrator has final and absolute discretion to interpret the terms of the Plan, to determine eligibility for benefits and amount of benefits to be paid, . . .  to resolve any ambiguities and to make all decisions, and such determinations and decisions shall be conclusive and binding to all parties.

(Answer Ex. A, p. 4.)  Plaintiff agrees that the Plan grants sufficient discretion to the administrator such that Defendant's denial of Plaintiff's claim for medical benefits must be reviewed under the "arbitrary and capricious" standard.

Review under the arbitrary and capricious standard is "extremely deferential and has been described as the least demanding form of judicial review." *McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir. 2003).  Under this standard a

benefit determination will be upheld if it is "'rational in light of the plan's provisions.'"
*Univ. Hosps. of Cleveland v. Emerson Elec. Co.*, 202 F.3d 839, 846 (6th Cir. 2000) (quoting
*Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 381 (6th Cir. 1996)).  "A plan
administrator's decision will not be deemed arbitrary and capricious so long as 'it is possible
to offer a reasoned explanation, based on the evidence, for a particular outcome.'" *Haus v.
Bechtel Jacobs Co., LLC*, 491 F.3d 557, 561-62 (6th Cir. 2007) (quoting *Davis v. Ky. Fin.
Cos. Ret. Plan*, 887 F.2d 689, 693 (6th Cir. 1989)).

The Plan included several health benefit options.  Plaintiff elected coverage under the
Fixed Package.  (Def.'s Answer, Ex. B, Fixed Package/COBRA/Retiree Benefits Election
Form.)  The Fixed Package provides for medical benefits as follows:

> Current medical coverage election at same cost that is paid by active
> employees for up to 12 months; followed by up to an additional 18 months of
> coverage at 100% of full premium.

(Answer, Ex. B.)

In denying Plaintiff's appeal of the denial of medical benefits at the $61 per month
rate, Defendant explained that the rate increase in 2008 from $61 per month to $1047.80 per
month reflected the fact on January 9, 2008, Plaintiff's coverage changed from the 12 month
period of coverage at the active employee (subsidized) rate to the additional 18 month period
of coverage at the full (unsubsidized) rate.  (Answer, Ex. D, 8/7/08 Denial of Appeal.)

Plaintiff does not dispute Defendant's representation that $61 per month is the active
employee (subsidized) rate for 2008 or that $1047.80 is the full (unsubsidized) contribution

rate for 2008.  Instead, Plaintiff contends that because the Plan documents do not establish what the "active employee" rate or the "full premium" rate is, and because the Plan's annual enrollment and confirmation letters for 2008 established a monthly premium of $61 per month for 2008 and the first six months of 2009, Defendant's denial of medical benefits on the basis of Plaintiff's failure to pay a monthly premium of $1047.80 per month beginning in January 2008 was arbitrary and capricious.

The Plan itself is not ambiguous.  The provisions of an ERISA plan are interpreted "according to their plain meaning, in an ordinary and popular sense."  *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 556 (6th Cir. 1998) (citing *Regents of the Univ. of Mich. v. Agency Rent-A-Car*, 122 F.3d 336, 339 (6th Cir. 1997)).  The plain meaning of the Fixed Benefit option is that for the first twelve months after separation, the cost of medical coverage will be the same as the cost paid by active employees (i.e., the subsidized rate), and that after the first twelve months, medical coverage can be continued for an additional eighteen months at 100% full premium (i.e., the unsubsidized rate).

As of January 1, 2008, Defendant increased the active employee rate from $44 per month to $61 per month.  Plaintiff's twelve month period of medical coverage at the active employee rate was scheduled to terminate on January 9, 2008.  Because Plaintiff was subject to the increased active employee rate of $61 per month for the first nine days of January 2008, Defendant was technically correct in sending Plaintiff the annual enrollment forms for 2008 which set the $61 per month rate.  Defendant's actions were nevertheless confusing or

6

misleading to Plaintiff because Defendant confirmed Plaintiff's enrollment and accepted Plaintiff's $244 check for the first three months of 2008 without alerting Plaintiff to the fact that his eligibility for the active employee rate was about to terminate and his rate for the next eighteen months would be much higher. However, the fact that there was some confusion about the applicable medical coverage rates during the 2008 enrollment process does not alter the terms of the Plan. The enrollment forms all contain the proviso that in the event of a conflict between the forms and the provisions of the plan document, the provisions of the plan document govern.[1] In addition, at least one of the enrollment forms distinguishes between active and inactive employees, and notes that with respect to active employees, Defendant pays the "major share" of the medical coverage.

Defendant's action in increasing Plaintiff's monthly premium to the full (unsubsidized) rate of $1047.80 per month was not arbitrary or capricious. This action was consistent with the unambiguous terms of the Plan. Accordingly, Defendant is entitled to judgment on the pleadings as to Count I of Plaintiff's complaint.

---

[1]The Enrollment form provides as follows:

In the event that the content of this statement or any oral representations made by any person regarding a plan, policy or program conflict with or are inconsistent with the provisions of the applicable plan document, policy or program, the provisions of the plan document, policy or program are controlling.

(Compl. Ex. A.) Similar statements are contained on the confirmation of benefits forms for 2008 and 2009. (Compl. Ex. B, D.)

7

**IV.**

Count II of Plaintiff's complaint alleges a claim for equitable estoppel. Defendant contends it is entitled to judgment on Plaintiff's equitable estoppel claim because principles of estoppel cannot be applied to vary the terms of unambiguous ERISA plan documents.

It is well-established that principles of estoppel "cannot be applied to vary the terms of unambiguous plan documents; estoppel can only be invoked in the context of ambiguous plan provisions." *Sprague v. Gen. Motors Corp*., 133 F.3d 388, 404 (6th Cir. 1998). *See also Marks v. Newcourt Credit Group, Inc*., 342 F.3d 444, 456 (6th Cir. 2003) ("A party cannot seek to estop the application of an unambiguous written provision in an ERISA plan . . . ."). There are at least two reasons for this rule:

> First, . . . estoppel requires reasonable or justifiable reliance by the party asserting the estoppel. That party's reliance can seldom, if ever, be reasonable or justifiable if it is inconsistent with the clear and unambiguous terms of plan documents available to or furnished to the party. Second, to allow estoppel to override the clear terms of plan documents would be to enforce something other than the plan documents themselves. That would not be consistent with ERISA.

*Sprague*, 133 F.3d at 404.

The Plan documents clearly provide for medical coverage at the same cost that is paid by active employees for up to twelve months, and, after the first twelve month period, for an additional eighteen months at 100% of full premium. (Answer, Ex. D.) Plaintiff's asserted reliance on representations that he could have benefits for an additional eighteen months at $61 per month, i.e., at the same rate as active employees, cannot be reasonable or justifiable

because it is contradicted by the clear language of the Plan itself. Defendant is accordingly entitled to judgment on the pleadings as to Count II of Plaintiff's complaint.

## V.

Plaintiff alleges in his complaint that this action arises under § 502 of ERISA. However, he also asserts pendent state law claims. (Compl. ¶ 3.) Defendant contends it is entitled to dismissal of Plaintiff state law claims because they are preempted by ERISA.

To the extent Plaintiff is asserting state law claims, those claims are preempted by ERISA. "ERISA preempts 'any and all State laws insofar as they may now or hereafter relate to any employee benefit plan.'" *Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.*, 399 F.3d 692, 697 (6th Cir. 2005) ("*PONI*") (quoting ERISA § 514(a), 29 U.S.C. § 1144(a)). Congress did not intend for ERISA "to preempt traditional state-based laws of general applicability that do not implicate the relations among the traditional ERISA plan entities, including the principals, the employer, the plan, the plan fiduciaries, and the beneficiaries." *Id.* at 698 (quoting *LeBlanc v. Cahill*, 153 F.3d 134, 147 (4th Cir. 1998)). However, where, as here, "the contract at issue in the breach-of-contract claim is the ERISA plan itself, the claim is clearly preempted." *Id.* (citing *Darcangelo v. Verizon Commc'ns, Inc.*, 292 F.3d 181, 194 (4th Cir. 2002)). Because Plaintiff's breach-of-contract and estoppel claims would create an alternate enforcement mechanism for Defendant's performance under the ERISA plan, the claims are preempted under ERISA § 514(a). *See PONI*, 399 F.3d at 699-700.

For the reasons stated above, Defendant's motion for judgment on the pleadings will be granted.  An order and judgment consistent with this opinion will be entered.


Dated: <u>June 18, 2009</u>                                   <u>/s/ Robert Holmes Bell</u>
                                                              ROBERT HOLMES BELL
                                                              UNITED STATES DISTRICT JUDGE